IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEHAN ZEB MIR,

                  Plaintiff,

    v.

BRUCE ALAN BROD, et. al,

               Defendants.

CIVIL ACTION
NO. 2:17-cv-04956

## OPINION

**Slomsky, J.**                                                **November 2, 2022**

## TABLE OF CONTENTS

I.   **INTRODUCTION** ................................................................................................................. 1

   A.   **The Claims** ................................................................................................................. 1

   B.   **The Parties** ................................................................................................................. 3

II.   **BACKGROUND** ................................................................................................................. 7

   A.   **Factual Background** ................................................................................................... 7

   B.   **California Procedural History** ................................................................................. 10

   C.   **Pennsylvania Procedural History** .......................................................................... 14

   D.   **New York Procedural History** ................................................................................. 17

III.  **STANDARD OF REVIEW** .............................................................................................. 20

   A.   **Federal Rule of Civil Procedure 12(b)(6)** ............................................................. 20

**B.   Federal Rule of Civil Procedure 12(b)(2)** ........................................................ 22

**IV.  ANALYSIS** ........................................................................................................ 23

**A.   Requests for Judicial Notice** ........................................................................ 24

**B.   Counts I to VII Will Be Dismissed Against Members of the Pennsylvania, New York, and California Medical Boards in Their Official Capacity Based on Eleventh Amendment Sovereign Immunity Grounds** ............................... 25

**C.   Counts I to VII Will Be Dismissed as Time-Barred Against All Defendants Except the Pennsylvania Medical Board Defendants in Their Individual Capacity** ....................................... 27

1.   California Medical Board Defendants  ........................................................ 30

2.   California Accessory Defendants ................................................................. 30

3.   PVHMC Defendants ...................................................................................... 31

4.   SAC Hospital Defendants .............................................................................. 32

5.   New York State Defendants........................................................................... 32

**D.   Count VI and the Section 1986 Claim in Count IV Will Be Dismissed Against the Pennsylvania Medical Board Defendants as Time-Barred**.................................. 33

**E.   Counts I to VII Against All Defendants in Their Individual Capacity Also Will Be Dismissed on Res Judicata Grounds** ......................................... 33

1.   Pennsylvania Medical Board Defendants  ................................................... 34

a.   Counts I to VII Against the Pennsylvania Medical Board Defendants Are Barred by Claim Preclusion ................................................................. 34

i.   First Prong: Thing Sued Upon or For ................................................ 35

ii.     Second Prong: Same Cause of Action ................................................ 35

iii.    Third Prong: Same Parties or Their Privies ...................................... 36

iv.    Fourth Prong: Capacity to Sue or Be Sued ...................................... 37

b.   Counts I to VII Against the Pennsylvania Medical Board Defendants
     Are Barred by Issue Preclusion................................................................. 37

     i.     First Prong: Identity of Issues ......................................................... 38

     ii.     Second Prong: Final Judgment on the Merits................................. 40

     iii.    Third Prong: Same Parties or Their Privies...................................... 41

     iv.    Fourth Prong: Full and Fair Opportunity to Be Heard.................... 41

2.   Counts I to VII Against the New York State Defendants Will Be Dismissed
     on Claim and Issue Preclusion Grounds ........................................................ 42

3.   Counts I to VII Against the California Medical Board Defendants
     Will Be Dismissed on Claim and Issue Preclusion Grounds........................ 44

     a.   Claim Preclusion Bars Plaintiff From Relitigating Counts I to VII
          Against the California Medical Board Defendants.................................... 44

     b.   Issue Preclusion Also Bars Plaintiff From Relitigating Counts I to VII
          Against the California Medical Board Defendants.................................... 45

          i.     First Prong: Final Adjudication ....................................................... 45

          ii.     Second Prong: Identical Issue.......................................................... 46

          iii.    Third Prong: Actually Litigated and Necessarily Decided.............. 47

**F.   Counts I to VII Against the New York State, California Medical Board, PVHMC, and SAC Hospital Defendants Will Be Dismissed for Lack of Personal Jurisdiction** ................................................................. 48

    1.   General Jurisdiction ........................................................... 49

    2.   Specific Jurisdiction ........................................................... 50

**G.   Amending the Complaint Would Be Futile** ................................ 53

**V.   CONCLUSION** ............................................................................. 53

I.   **INTRODUCTION**

A.  **The Claims**

In 2006, Plaintiff Jehan Z. Mir's medical license was revoked for alleged medical misconduct.  As a result, he filed suit in this Court against 57 Defendants including individuals, physicians in their individual and official capacities, physician assistants, New York State Department of Health officials, the Director of the Office of Professional Medical Conduct of New York State, two California hospitals, and medical board members in Pennsylvania, New York, and California.[1]   In his Complaint, Plaintiff alleges seven claims against Defendants, essentially asserting that the three state Boards of Medicine wrongfully revoked his medical licenses in their respective states.[2]  The claims are as follows:

(a)  A preliminary injunction to restore Plaintiff's medical licenses (Count I);

(b)  A permanent injunction to prevent Defendant Medical Board members from continuing to enforce their decisions to revoke his medical licenses (Count II);

(c)  Intentional interference with the right to practice a profession under 42 U.S.C. § 1983[3] against all Defendants (Count III);

---

[1]   These Defendants are identified in more detail in Section I.B below.

[2]   The first two claims request injunctive relief rather than allege specific causes of action.

[3]   Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(d) Conspiracy to violate contractual and civil rights, in violation of 42 U.S.C. §§ 1981[4],

1985[5], and 1986[6] against all Defendants (Count IV)[7];

(e) Interference with prospective economic advantage against all Defendants (Count V);

(f) Defamation against all Defendants (Count VI); and

(g) Intentional infliction of emotional distress against all Defendants (Count VII).

---

[4]   42 U.S.C. § 1981 provides, in relevant part:

(a) Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . .

(b) "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)-(b).

[5]   42 U.S.C. § 1985 provides, in relevant part:

. . .

(3) Depriving persons of rights or privileges.  If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[6]   42 U.S.C. § 1986 provides, in relevant part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act . . . .

42 U.S.C. § 1986.

[7]   Reading Count IV liberally, it appears to consist of three separate claims.  The first is Violation of Contractual and Civil Rights under 42 U.S.C. § 1981.  The second is Conspiracy to Violate Contractual and Civil Rights under 42 U.S.C. § 1985.  The third is Neglect to Prevent a Conspiracy to Violate Contractual and Civil Rights under 42 U.S.C. § 1986.

(See Doc. No. 1-2 at 7-16.)

### B. The Parties

Plaintiff has named 57 persons as Defendants in this case.  He is suing them for their roles in the revocation of his medical licenses by the medical boards and for their roles in refusing to reinstate his licenses.  They are grouped as Defendants by their respective medical board, state agency, or hospital as of the time of the filing of this lawsuit.

The first group of Defendants are members of the Pennsylvania State Board of Medicine ("Pennsylvania Board"), including the Chairperson and Vice Chairman of the Pennsylvania Board, all collectively referred to as the "Pennsylvania Medical Board Defendants."[8]  These Defendants, Plaintiff claims, were personally involved in revoking his Pennsylvania medical license and have the authority to reinstate his license.  (See id. at 17-20.)  He is suing them in their individual and official capacities.  (See id.)

The second group of Defendants are current and past members of the Medical Board of California ("California Board"), including the former Executive Director and the President of the Board, collectively referred to as "California Medical Board Defendants."[9]  Plaintiff alleges these

---

[8]  Defendant Marilyn J. Heine was a member and then-Chairperson of the Pennsylvania Board. (See Doc. No. 1 at 17.)

Defendant Bruce Alan Brod was a member and then-Vice Chairman of the Pennsylvania Board. (See id.)

Defendants Charles A. Castle, Cary Cummings III, Rachel Levine, Keith E. Loiselle, Sukh D. Sharma, Evon Sutton, John M. Mitchell, and Anna M. Moran were members of the Pennsylvania Board as of November 3, 2017.  (See id. at 17-20.)

[9]  Defendant Kimberly Kirchmeyer is currently serving as the director of the California Department of Consumer Affairs.  When Plaintiff instituted this suit, however, Kirchmeyer was Executive Director, past Interim Executive Director, and past Deputy Director of the California Board.  (See id. at 20-21.)

Defendant Linda K. Whitney was a member of the California Board during the events alleged in Plaintiff's Complaint but has since retired from the Board.  (See id. at 21.)  Plaintiff avers

members "provid[ed] false basis" to the Pennsylvania Board "to prosecute reciprocal disciplinary charges" against him.  (Id. at 20.)  Plaintiff has filed suit against these Defendants in their individual and official capacities as members of the California Board.  (See id. at 20-27.)

The third group of Defendants are officials of the New York Department of Health and the Office of Professional Medical Conduct, and members of the New York State Medical Board ("New York Board"), all collectively referred to as the "New York State Defendants."[10]  Plaintiff

---

that Whitney had filed both the petition to revoke his medical license for failing to comply with probationary conditions regarding his right to practice medicine and the petition to revoke his license "without Notice or Hearing."  (Id.)  Furthermore, Plaintiff alleges that Defendants Whitney and Kirchmeyer's deposition testimony during administrative hearings before the California Board show that the Board's charges against him were false.  (See id. at 21-22.)

Defendant Sharon Levine was sued for her role as past President of the California Board and as a member of the panel hearing Plaintiff's arguments on remand from the California Superior Court in 2010.  (See id. at 22.)

Defendant Dev GnanaDev was a member and President of the California Board as of November 3, 2017.  (See id. at 23.)

Defendant Denise Pines was a member and Vice-President of the California Board as of November 3, 2017.  (See id. at 23-24.)

Defendants Michelle Anne Bholat, Katherine Feinstein, Randy W. Hawkins, Kristina D. Lawson, Brenna Sutton-Wills, David Warmoth, Jamie Wright, and Felix C. Yip were members of the California Board as of the filing of Plaintiff's Complaint.  (See id. at 24-27.)

[10] Defendant Howard Zucker was then-Commissioner of the New York Department of Health. Plaintiff alleges Zucker was responsible for enforcing the New York Board's revocation of his medical license.  Zucker was not serving as Commissioner in 2013 when Plaintiff's medical license was revoked.  (See id. at 28.)

Defendant Keith Servis is the Director of the Office of Professional Medical Conduct in the New York Department of Health.  (See id.)

Defendants George Autz, Roseann C. Berger, Lawrence J. Epstein, Marian Goldstein, Sumathi Kasinathan, Robert G. Lerner, JoAnn Marino, Lynn Gladys Mark, Louis J. Papa, Maria Plummer, Sumir Saghal, Arash Salemi, Amit M. Shelat, Greg Shutts, and Robert R. Walther are current members of the New York State Board of Medicine.  (See id.)

Defendants Kristen E. Harkin, Kathleen S. Lill, Swaminathan Rajan, Alexander Schwartzman, and Mushtaq A. Sheikh are former members of the New York State Board of Medicine.  (See id.)  At the time of the filing of this lawsuit, however, they were members.

is suing these Defendants for enforcing the New York Board's 2013 decision to revoke his medical license.  (See id. at 29.)  Each of these Defendants are sued in their individual and official capacities.  (See id.)

The fourth group consists of four Defendants labeled by Plaintiff as "California Accessory Defendants."[11]  (Id.)  First, Defendant Mary Agnes Veronica Matyszewski prosecuted the California Board's charges against Plaintiff and is alleged to have "aided and abetted revocation of Mir's medical license" and to have produced false testimony, destroyed evidence, and conspired with the Pennsylvania and New York Boards to revoke Plaintiff's medical licenses there.  (Id. at 29-30.)  Second, Plaintiff maintains that Defendant Jerry D. Wu, a surgery consultant, interviewed him on the California Board's behalf to investigate claims that Plaintiff fabricated an admission note for a patient.  (See id. at 30-31.)  Third, Defendant Joshua A. Bardin, who served as an expert witness, allegedly made false claims against Plaintiff and false diagnoses during California Board hearings to dispute Plaintiff's diagnosis of a patient.  (See id. at 31.)  Fourth, Plaintiff alleges that Defendant Kenneth D. Beck, another expert for the California Board during its hearings, "fil[ed] false documents" when he stated that "he was [a] Certified Vascular Surgeon when in fact he was not certified by any surgical boards."  (Id. at 31-32.)  Plaintiff is suing each of these Defendants in their individual capacities only.  (See id. at 10.)

---

[11]  Although Plaintiff names these Defendants as a group separately from others in this lawsuit, the California Medical Board Defendants made court filings on their own behalf and on behalf of the California Accessory Defendants.  Accordingly, the Court will treat Plaintiff's claims against these two groups of Defendants together.

The fifth group of Defendants in this lawsuit are the Pomona Valley Hospital Medical Center ("PVHMC"),[12] Vinod Kumar Garg,[13] Lew Bradley Disney, and Harold Damuth, Jr,[14] all collectively referred to as the "PVHMC California Hospital Defendants."   (See id. at 32-33.) Plaintiff served on the staff at PVHMC and had a $600,000 contract.  He alleges that PVHMC California Hospital Defendants conspired to provide false testimony at the California Board hearings and reported the loss of Plaintiff's medical staff privileges at PVHMC to the National Practitioner Data Bank.  (See id. at 32-33; Doc. No. 63 at 30.)  Plaintiff is suing PVHMC California Hospital Defendants only in their individual capacity.  (See Doc. No. 1 at 10.)

The sixth and final group of Defendants are San Antonio Community ("SAC") Hospital, Donald M. Alpiner, and Nabil Koudsi, collectively referred to as "SAC California Hospital Defendants."[15]   (See id. at 33-35.)  Plaintiff advances wide-ranging claims that SAC Hospital "is heavily involved in kickbacks and bribery" and terminated him to re-hire physicians who "performed unnecessary surgeries which increased revenue for the hospital."  (Id. at 34.)  He

---

[12]  As PVHMC points out in its Motion to Dismiss (Doc. No. 31), Plaintiff incorrectly named this Defendant as "Pomona Valley Hospital."  (Id. at 8.)  The Court will refer to this Defendant as "Pomona Valley Hospital Medical Center" ("PVHMC").

[13]  Defendant Garg proctored Plaintiff's surgeries on a patient that served as the basis of the California Board's decision to revoke Plaintiff's medical license.  (See id. at 43.)  Plaintiff alleges that Defendant Garg gave perjured testimony three times during the California Board license revocation proceedings and impermissibly delayed proctoring Plaintiff's surgeries which "result[ed] in gangrene."  (Id. at 33.)

[14]  Defendants Disney and Damuth, Jr., were Chief of Surgery and Chief of Staff at PVHMC, respectively.  (See id.)  Plaintiff alleges they conspired to suspend and terminate his medical staffing privileges at PVHMC "without providing notice and hearing."  (Id.)

[15]  Defendant Donald M. Alpiner was SAC Hospital's Chief of Staff.  Plaintiff alleges that Alpiner suspended and harassed him on false charges.  (See id. at 34-35.)

Defendant Nabil Koudsi was SAC Hospital's Chief of Surgery.  Plaintiff alleges that Koudsi falsely "prosecuted charges [against him] for 5 years."  (Id. at 35.)  Defendants Alpiner and Koudsi "are both doctors affiliated with the hospital in California who were involved in the peer review process that resulted in Mir losing his privileges at the hospital."  (Doc. No. 30 at 12.)

further alleges that SAC Hospital offered "false testimony by its employee Stewart that Mir had planted [an] 'Admission Note' into the medical records of SAC hospital" and also conspired with the Pennsylvania Board to revoke his Pennsylvania medical license.  (Id.)  Plaintiff is suing each of these Defendants in their individual capacity.  (See id. at 11.)

Before the Court are Defendants' Motions to Dismiss (Doc. Nos. 13, 30, 31, 36, 42).  On September 10, 2018, the Court placed this case in suspense until it rendered a decision on the Motions.  (Doc. No. 86.)  Today, the Court renders such a decision.

## II.     BACKGROUND

Plaintiff advances federal and state causes of action against defendants who either are past and current medical board members or affiliated with medical organizations.  While Plaintiff has sued many members of the state medical boards in Pennsylvania, New York, and California in their individual and official capacities, he has not named as defendants the respective medical boards themselves.  But for reasons stated below, this omission is immaterial and does not prevent Plaintiff's claims against board members in their official capacity from being dismissed as defendants.

### A.  Factual Background[16]

On June 8, 2000, Plaintiff encountered a female patient ("GF") exhibiting symptoms of impaired blood flow.  The patient had a prior history of hypertension and Plaintiff believed she had suffered a stroke.  (See id. at 37.)  Plaintiff ordered an arteriogram to scan GF's arteries and discovered what he believed to be a complete obstruction of the femoral artery, which starts near the groin.  (See id. at 38.)  After taking GF's history and physical assessment and discovering no

---

[16]  At the Motion to Dismiss stage, the facts alleged in a complaint are accepted as true and viewed in the light most favorable to the plaintiff.  See Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018)

pulse in the femoral artery, Plaintiff diagnosed GF with an embolic clot, admitted GF to SAC Hospital, and attempted to schedule an emergency surgery to remove the clot.  (See id. at 39.) Because surgery could not be performed until almost midnight, Plaintiff transferred GF to Pomona Valley Hospital Medical Center ("PVHMC") with the consent of GF's family.  (See id. at 39-40.) Plaintiff obtained GF's daughter's consent to perform two surgeries and to take a further scan during the surgery.  (See id. at 40.)

While at PVHMC, Plaintiff claims he had difficulty finding a proctor to assist him during surgery.  (See id. at 41.)  A proctor is someone who "observ[es] the physician's performance of medical procedures and review[s] the medical charts of the physician's patients."[17]  Among the difficulties were the proctor's willingness to proctor one surgery but not another and the proctor's delay in arriving at the operating room.  (See id.)  After the proctor arrived, Plaintiff completed the surgeries and found both older and newer clots that he alleges are "classic diagnostic evidence

---

[17]  In Mir v. Pomona Valley Hosp. Med. Ctr., No. B148849, 2003 WL 403301, at *1 (Cal. Ct. App. Feb. 24, 2003), the California Court of Appeals specifically addressed the proctoring requirements after Plaintiff sued PVHMC because it "summarily suspended Mir's vascular surgery privileges."  Id.  As the court explained:

> The Medical Staff bylaws specify that before a physician becomes an active member of the Medical Staff at Pomona Hospital, the [] physician must first become a provisional member and satisfy proctoring requirements.  Proctoring means that members of the active Medical Staff monitor a physician's hospital practice by observing the physician's performance of medical procedures and/or reviewing the medical charts of the physician's patients.  When Mir applied for staff membership at Pomona Hospital in September 1999, he was granted provisional membership on the Medical Staff with general, thoracic[,] and vascular surgery privileges.  The Medical Staff required initially that Mir be proctored regarding all three surgical categories.  After he completed proctoring regarding general and thoracic surgical patients, proctoring continued as to his vascular surgery patients.  Mir was also appointed to Pomona Hospital's trauma back-up on-call panel (trauma panel).

> Id.  At PVHMC, Plaintiff had certain proctoring privileges to oversee and assess other physicians' surgeries.

of 'Embolism'" as confirmed by a pathologist.  (Id. at 41-42.)  After surgery, GF's leg temporarily regained full circulation.  (See id. at 42.)

On June 9, 2000, Plaintiff sent a letter to Defendant Dr. Lew Disney, PVHMC's Chief of Surgery, "document[ing] the above facts, particularly emphasizing that delay in starting surgery due to lack of cooperation of proctors which almost injured his patient."  (Id. at 42.)  On June 10, 2000, two days after the initial surgery, GF had similar circulatory problems and was diagnosed with "Recurrent Thrombo-Embolism."  (Id. at 43.)  Plaintiff avers he again encountered difficulties with finding a proctor to perform surgery to remove the additional clots.  (See id.)  Plaintiff asserts that Defendant Dr. Vinod Garg[18] stated he could only stay for one surgery but not the other because his child "was having some sort of a *party* and that he had to be there."  (Id. at 43.)  Plaintiff performed the surgery and removed several more masses confirmed by the pathologist to be clots. (See id.)  Dr. Garg was present at GF's bedside the night of the most recent surgery.  (See id. at 44.)

On June 11, 2000, Plaintiff sought out another proctor to "rule out formation of any additional clots within the artery."[19]  (See id. at 44.)  Due to an alleged fear of suspension, he did not document the unavailability of a proctor.[20]  (See id.)  Plaintiff states that his notes show he was aware of GF's condition and that Dr. Garg was not available despite several attempts to contact him.  (See id. at 45.)  On June 12, 2000, Plaintiff performed yet another surgery removing additional recurrent clots after waiting about twelve hours for Dr. Garg to proctor the surgery.  (See

---

[18]  Plaintiff describes Dr. Garg as a staff doctor at SAC Hospital who performed the most vascular surgeries at PVHMC despite not being a "formally trained vascular surgeon."  (Id. at 32.)

[19]  Plaintiff requested the help of both Dr. Lew Disney and Dr. Harold Damuth, Jr., PVHMC's Chief of Staff.

[20]  He avers that including such information in his documentation "could be viewed as a hostile, disruptive act on [the] part of Dr. Mir and ground for suspension."  (Id. at 44.)

id. at 46.)  The circulation in GF's leg was restored and she had normal circulatory signals following surgery. (See id. at 47.)  On June 14, 2000, GF had developed gangrene in her leg and it had to be amputated.  Dr. Garg refused to proctor the amputation.  Plaintiff instead found another doctor to proctor the amputation of GF's leg.  (See id.)  Plaintiff alleges that Dr. Garg followed improper procedures regarding the completion of two proctoring reports that should have been completed immediately after the June 10 and June 12 surgeries, but were instead submitted on June 18, 2000.  (See id.)

In September 2000, Defendant PVHMC's Department of Surgery reviewed Dr. Garg's proctoring reports as part of its review of the GF case and removed Plaintiff's proctoring privileges in general and thoracic surgery, but permitted him to continue to proctor various vascular surgeries performed by other physicians.[21]  (Id. at 48.)  PVHMC reopened its review of the GF case in October.  At that time, Plaintiff shared his concerns regarding delays in finding proctors with the Invasive Procedures Surgery Committee (the "IPSC").  (See id.)  The IPSC did not find any wrongdoing on Plaintiff's part and closed its review.  (See id.)  However, on November 13, 2000, Doctors Harold Damuth and Lew Disney, Chiefs of Staff and Surgery respectively, "summarily suspended Dr. Mir's Vascular Surgery privileges [at PVHMC] without giving any reasons."  (Id.)

### B.  California Procedural History

Plaintiff's litigation in California over the revocation of his medical license is quite extensive.  To accurately detail Plaintiff's litigation in state and federal court in California, this

---

[21]  "The bylaws [at PVHMC] also provide that a physician's clinical privileges may be summarily suspended where 'immediate action must be taken in order to reduce a substantial likelihood of imminent danger to the health of any individual.'  On November 13, 2000, Pomona Hospital summarily suspended Mir's vascular surgery privileges (effective November 10, 2000) and removed him from the trauma panel."  Mir v. Pomona Valley Hosp. Med. Ctr., No. B148849, 2003 WL 403301, at *1 (Cal. Ct. App. Feb. 24, 2003).

Court will quote from the opinion of the District Court in the Southern District of California issued

on September 26, 2017 in support of its order denying Plaintiff's motion for summary judgment:

> Defendants' actions against Plaintiff commenced on July 16, 2003, when Defendants filed an Accusation against Plaintiff for misdiagnosis, negligence, improper transfer, and failure to document in connection with his care of G.F. . . . The Accusation was based in part on expert opinions provided by Dr. Joshua Bardin and Dr. Kenneth Deck, which followed their thorough review of investigation reports, medical records, and surgery reports. . . . Plaintiff received a 13-day state administrative hearing before an administrative law judge ("ALJ") of the Office of Administrative Hearings . . . . At the administrative hearing, Dr. Mir was represented by counsel, witnesses testified under oath, and a transcript was produced as a result of the hearing. . . .
>
> During the course of the hearing on November 8, 2004, the Medical Board added charges of fabricating documents ("documentation" charges) and dishonesty in a First Amended Accusation against Plaintiff. . . . On April 6, 2005, the last day of the hearing, the Board filed a Second Amended Accusation ("SAA") alleging that Plaintiff had made false statements during the Medical Board investigation interviews and/or during the administrative hearing . . . . Plaintiff filed an opposition/motion to strike Complainant's SAA . . . . Douglas Schwab, Dr. Mir's attorney, argued in several pages in that motion that the additional charges would create a "trial upon a trial" that would prejudice Respondent. . . . On May 11, 2005, the parties presented oral argument before the administrative law judge regarding whether the SAA could be filed. . . . Dr. Mir's attorney argued . . . that Plaintiff was entitled to "notice and opportunity to present his defenses" and requested time to present further evidence on the charges alleged in the SAA. . . . On May 25, 2005, the ALJ denied Plaintiff's motion to strike the SAA, but granted Respondents' request for additional time to present evidence against the allegations set forth in the SAA. . . . On August 26, 2005, Plaintiff filed his closing brief in the administrative hearing which, among other things, addressed the new charges in the Second Amended Accusation, by challenging the credibility of Medical Board witness Dr. Garg. . . .
>
> On March 3, 2006, the ALJ issued a proposed decision recommending revocation of Plaintiff's license. . . . Based on this recommendation, the Medical Board issued a decision on May 22, 2006 revoking Plaintiff's medical license . . . to which Plaintiff filed a petition for reconsideration and request for stay of the Medical Board's decision. . . . After hearing oral argument presented from both sides, on December 6, 2006, the Medical Board issued a Decision After Reconsideration revoking Plaintiff's medical license. . . . The Board allowed Dr. Mir the opportunity to petition for reinstatement of his license in "two years after the effective date of [the] decision." . . . Following the revocation, on January 9, 2007 Plaintiff filed a writ of mandamus with the Superior Court of California, Sacramento County challenging the revocation of his license. . . .

On August 10, 2007, the superior court granted Plaintiff's mandamus petition in part, and remanded to the Medical Board to reconsider a penalty consistent with the superior court's opinion. . . . Specifically, the superior court found that there was not sufficient evidence to support the findings that (1) Plaintiff unreasonably delayed treatment by transferring G.F. to another hospital; and (2) an Authorization form was signed by G.F.'s daughter but not by Plaintiff. . . .

With respect to the charges in the SAA, the superior court found insufficient evidence to support any of the SAA allegations except the alleged false statement that the proctor would not allow Dr. Mir to perform a femoral popliteal bypass procedure on June 10. . . . As to this statement, the superior court stated that "the weight of the evidence supports the finding that petitioner was untruthful in stating that the proctors refused to allow him to perform a bypass on June 10." . . . The court found that "[p]etitioner ha[d] not persuaded the court that he was denied a fair trial by the amendment of the accusation at the conclusion of the proceedings" where Plaintiff failed to show what additional evidence might have been presented or how it might have changed the outcome. . . .

In addition, the superior court confirmed the ALJ's findings as to the allegations that were alleged in the original Accusation and the FAA relating to: (1) Plaintiff's misdiagnosis of patient G.F.'s medical condition on June 8, 2000 leading to the wrong surgery; (2) Plaintiff's failure to order an intra-operative or post-operative angiogram to determine the efficacy of surgery; (3) Plaintiff's misdiagnosis on June 10, 2000 leading to the wrong surgery; and (4) failure to document services. . . .

In September 2007, Plaintiff filed a motion for new trial, . . . arguing that the weight of the evidence did not demonstrate that Plaintiff had not made a false statement that his proctor would not allow him to perform the femoral-popliteal bypass procedure; that the Court's findings that Plaintiff made the wrong diagnosis and performed the wrong procedure were not supported by the evidence; that the weight of the evidence . . . did not require Plaintiff to perform an intraoperative or completion angiogram on June 8, 2000, and that the weight of the evidence did not prove that Plaintiff's documentation was inadequate. . . . The superior court confirmed its original ruling and denied Plaintiff's motion for a new trial on January 29, 2008. . . . On January 29, 2008, the superior court filed a judgment consistent with its August 10, 2007 ruling, requiring a redetermination of penalty prior to March 25, 2008. . . . On February 29, 2008 Plaintiff was served with a notice of entry of judgment. . . .

Plaintiff then filed a petition for writ relief with the California Court of Appeal, . . . which the Court summarily denied on April 4, 2008. . . . On June 13, 2008, the Medical Board reissued a Corrected Decision on Remand again revoking Petitioner's license. . . . Plaintiff again filed a petition for writ of relief with the California Superior Court to set aside and vacate the Plaintiff's penalty, alleging

the Medical Board had not reviewed its decision but rather had simply reissued the previous findings. . . .

On October 17, 2008, the superior court denied Plaintiff's motion to set aside and vacate the penalty. . . .  The superior court held that Plaintiff's challenges to the factual findings underlying the decision to revoke the license were "amply considered and ruled on in the writ petition and unsuccessfully challenged in the Court of Appeal.  Such matters [had] been finally decided by Judge Ohanesian and the Court of Appeal and [the superior court would] not disturb those rulings." . . . The Court also rejected plaintiff's assertion that he had been denied due process of law in the writ proceeding or administrative proceeding before the Medical Board, stating that "[w]hile Dr. Mir may disagree with the Court's conclusions, such conclusions appear to have been reached after thoughtful and thorough consideration of the arguments, record, and law." . . .  The superior court denied a subsequent motion for new trial filed by Plaintiff on January 29, 2009. . . .

On April 22, 2009, Plaintiff appealed to the Third District Court of Appeal for a writ of mandate challenging the superior court's order. . . .  The Court of Appeal directed the superior court to vacate its prior peremptory writ of mandate and to issue a new writ directing the Medical Board to set aside its decision on remand and redetermine the penalty after allowing oral and written argument . . . .  The Court further stated that "a summary denial of the petition is necessarily on the merits" . . . and declined to reconsider its April 24, 2008 decision summarily denying petitioner's first writ of mandate challenging the Board's findings on the false statement and other evidentiary issues.

Following a hearing where both parties were afforded an opportunity for written and oral argument, the Medical Board issued another decision on September 27, 2010, finding "repeated" and "gross negligence" and imposed a five-year probation with various terms and conditions. . . .  On November 12, 2010, Plaintiff filed a third writ of mandamus in the superior court challenging the Medical Board's decision. . . .  The superior court, on August 24, 2011, mandated the Medical Board to vacate the probation term requiring Plaintiff to undergo psychiatric evaluation. . . .  The Court agreed with the Board that "[t]he issues previously decided by the Board and sustained by the Court . . . [were] no longer open for reexamination." . . .  The Court noted that it remanded to the Board "only to redetermine the penalty, not to reassess whether grounds for discipline existed." . . .  Further, the Court held that "[p]etitioner's belief that the Court's remand required a new hearing, or reopened the issues previously decided by the Court, is mistaken." . . .

On November 3, 2011 the Medical Board filed a Petition to Revoke Probation against Plaintiff. . . .  On August 16, 2012, the Medical Board issued a Default Decision and Order setting aside the 2012 Corrected Decision After Remand on the grounds that Plaintiff had violated the terms and conditions of his probation. . . . Plaintiff did not file any motion as to the Default Decision and as such on August

16, 2012, the Medical Board revoked Plaintiff's license for the fourth time for not complying with the conditions of probation.

Mir v. Kirchmeyer, No. 12-2340, 2017 WL 4271892, at *3-6 (S.D. Cal. Sept. 26, 2017) (denying Plaintiff's motion for summary judgment and granting defendants Kirchmeyer and Levine's summary judgment motion),[22] aff'd Mir v. Levine, 745 F. App'x 726 (9th Cir. 2018). Additionally, the Southern District of California dismissed Plaintiff's claims against many defendants, several of whom are current Defendants in this case, in their individual capacity and in their official capacity on Eleventh Amendment sovereign immunity grounds. Compare id. at *2, with Doc. No. 1 at 20-27.[23]

### C. Pennsylvania Procedural History

Plaintiff's litigation history in Pennsylvania also is considerable. This history is set forth in a February 21, 2017 per curiam opinion of the United States Court of Appeals for the Third Circuit.

> In 2012, the Medical Board of California and the New York State Board of Medicine revoked Mir's medical licenses, and soon after, the Pennsylvania Board of Medicine (the Board) initiated reciprocal disciplinary proceedings in the Commonwealth. The Board's hearing examiner initially scheduled a hearing for July 20, 2012, but Mir requested — and the hearing examiner awarded him — eight continuances, for a variety of reasons. The hearing examiner rejected his later continuance requests, however, and held a hearing in his absence on May 12, 2014, at which the prosecuting attorney for the Commonwealth presented certified copies of the California and New York decisions revoking his licenses. The hearing examiner admitted these exhibits into evidence and issued an order revoking Mir's

---

[22] Kimberly Kirchmeyer and Sharon Levine are Defendants in the present Complaint.

[23] Plaintiff's litigation history in California also includes another lawsuit filed against the Medical Board of California. In Mir v. Med. Bd. of Cal., Plaintiff sued the California Board as well as its Executive Director and President, Whitney and Levine, respectively, who are defendants in this action. No. 12-2349, 2013 WL 1932935, at *2 (S.D. Cal. May 8, 2013), aff'd 552 F. App'x 723 (9th Cir. 2014). There, he sought reinstatement of his medical license and alleged violations of Fifth and Fourteenth Amendment due process rights. Id. The Southern District of California dismissed his lawsuit against the defendants on Eleventh Amendment sovereign immunity grounds.

medical license in the Commonwealth.  Mir unsuccessfully challenged this decision with the Board, and then filed an appeal to the Commonwealth Court of Pennsylvania on November 12, 2015.

Eight days later, he initiated this action [in the Middle District of Pennsylvania] against various board members, alleging that the hearing examiner violated his due process rights by denying his continuance requests.  He asked the District Court to enter a temporary restraining order and preliminary injunction, to permanently enjoin Defendants from imposing any disciplinary action against him, and to retroactively reinstate his medical license.  He also sought money damages and attorney's fees.  The District Court denied these requests three days later, observing that it did "not have jurisdiction to entertain an appeal of the revocation of Plaintiff's Pennsylvania medical license."  The Clerk later entered default judgments against all Defendants upon Mir's request, because they failed to respond to Mir's complaint following the District Court's initial order.  Ultimately, the District Court set aside the default judgments, and granted the Defendants' motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), concluding that abstention was appropriate under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), because Mir was "simply attempting to attack the revocation of his Pennsylvania medical license in another way while the State appellate process is still ongoing."  Following the District Court's denial of Mir's motion for reconsideration, this timely appeal ensued.  . . .

As to the District Court's application of Younger, we have suggested that "frivolous or weak claims" that do "not meet the traditional requisites for injunctive relief . . . will not even require a district court to reach a Younger challenge."  . . .  Thus the District Court need not have reached the Younger question — and we do not reach it here — because Mir's complaint fails to state a plausible claim for relief.  . . .

The gravamen of Mir's complaint is that the hearing examiner violated his due process rights by denying his most recent continuance requests, and holding the revocation hearing in his absence.  But "the core of procedural due process jurisprudence is the right to advance notice . . . and to a meaningful opportunity to be heard."  . . .  And "[t]he matter of continuance is traditionally . . . discretion[ary] . . . and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel."  . . .  Mir's complaint clearly establishes that the hearing examiner afforded him sufficient notice and an opportunity to be heard; he simply declined to avail himself of it.

Mir acknowledged that the hearing examiner, on February 11, 2014, issued an "Order Granting Respondent's Eighth Request for Continuance," scheduling the hearing for May 12, 2014.  The order also stated, in all-capital boldface type, that "no further continuances will be granted to respondent in this matter."  He acknowledged receiving this order soon after, but he nonetheless requested another continuance on April 24, on the ground that he was required to be present in federal

15

court in California on May 16.  The hearing examiner denied this request on May 1 — again advising him that "no further continuances will be granted to respondent in this matter" — and Mir conceded receiving this denial on May 7.  In the meantime, he requested another continuance on May 2, on the ground that he was scheduled for jury duty in California on May 5, and another on May 9, to present expert testimony at his hearing.  The hearing examiner did not formally act on his May 2 or May 9 requests, but it is undisputed that, by May 7 — five days before his hearing — Mir was aware that his April 24 continuance request had been denied, and that the hearing examiner would not entertain further continuance requests, in other words, that his hearing would proceed on May 12.  It is also undisputed that he had already been awarded eight continuances at this point.  He cannot credibly claim to have been denied due process under these circumstances. . . .

Because Mir was not clearly entitled to relief, the District Court properly granted Defendants' Rule 12(b)(6) motion, and did not abuse its discretion in denying his motion for reconsideration.  Accordingly, we will affirm the judgment of the District Court.

Mir v. Behnke, 680 F. App'x 126, 128-31 (3d Cir. 2017), aff'g No. 15-2233, 2016 WL 3239365 (M.D. Pa. June 15, 2016).

When the Third Circuit decided Mir v. Behnke, Plaintiff had pending a petition for allowance of appeal to the Pennsylvania Supreme Court from the Commonwealth Court's October 31, 2016 decision denying his procedural due process, evidentiary, and other claims.[24]  See id. at 128 n.2.  His petition was denied on May 23, 2017, ending his state appellate journey.  See Mir v. Bureau of Prof'l & Occupational Affs., 169 A.3d 543 (Pa. 2017).

---

[24] In Mir v. Bureau of Prof'l & Occupational Affs., State Bd. of Med., the Commonwealth Court held that "[t]he [Pennsylvania] Board's decision to impose reciprocal discipline in this matter is supported by the record and comports with the [Medical Practices] Act."  No. 2557 C.D. 2015, 2016 WL 6407477, at *10 (Pa. Commw. Ct. Oct. 31, 2016).  Additionally, the court held that "Mir received all of the process that he was due under the Fourteenth Amendment" and that the "Hearing Examiner did not abuse her discretion when she denied Mir's ninth (and tenth) request(s) for a continuance."  Id. at *5-6.

16

### D.  New York Procedural History

In a March 27, 2015 opinion in <u>Mir v. Bogan</u>, the United States District Court for the

Southern District of New York described how the New York State Board of Medicine revoked

Plaintiff's medical license and the history of Plaintiff's litigation in New York State:

> In December 2006–after the initial revocation of Mir's medical license in California-the New York State Board of Professional Medical Conduct (the "New York Medical Board") brought a disciplinary proceeding against Mir based on the Medical Board of California's findings and revocation decision. . . .
> The New York authorities and Mir initially agreed to adjourn the hearing on the New York charges, pending Mir's appeal in California. . . .  In the interim, Mir verbally agreed not to practice medicine in New York. . . .
>
> After Mir's initial appeal in California was resolved, the New York Medical Board amended its charges against him . . . and scheduled a hearing for September 17, 2008. . . .  Shortly before the hearing date, however, Mir sought an adjournment due to continued proceedings in California. . . .  The Medical Board informed Mir that it would not further adjourn the hearing absent a signed consent agreement with Mir, in which he agreed not to practice medicine in New York until the charges against him were resolved. . . .  Mir then petitioned the Commissioner of the New York State Department of Health . . . to stay the hearing; [he] did not respond to Mir's request. . . .  On September 12, 2008, Mir signed the consent agreement, and the hearing was postponed pending resolution of the California proceedings. . . .
> On multiple occasions in 2010, Mir contacted [the Health Commissioner's successor] requesting that any New York charges be dropped and the consent agreement rescinded, based on the reinstatement of his California medical license. . . .  Mir received no response to his inquiries. . . .
>
> On July 22, 2011, Mir filed suit in the Southern District of New York against Shah and the New York Medical Board . . . alleg[ing] a violation of 42 U.S.C. § 1983, "claim[ing] that [d]efendants deprived him of his constitutional rights to due process and equal protection in a disciplinary proceeding initiated against him to revoke his license to practice medicine." . . .  Mir "also claimed that a section of New York's Public Health Law ('PHL') governing disciplinary proceedings against licensed medical professionals, PHL § 230(10)(p), is unconstitutional because it denies due process." . . .  Defendants moved to dismiss. . . .
>
> On August 8, 2012, the Honorable Barbara Jones issued an opinion holding that the <u>Younger</u> abstention doctrine barred Mir's "as applied" challenge to Section 230(10)(p). . . .  Judge Jones concluded that abstention was appropriate with respect to Mir's "as applied" challenge to Section 230(10)(p). . . .

Judge Jones reached the merits of Mir's facial challenge to Section 230(10)(p), however.  Section 230(10)(p) authorizes "New York [to] use referral proceedings to revoke or suspend a medical professional's license if he is found guilty of misconduct in another state that would warrant such a penalty if committed in New York."  . . .

Judge Jones then conducted the three-prong due process analysis set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)[.]
. . .
The court went on to hold that "the referral proceedings of PHL § 230(10)(p) provide medical professionals with the due process guaranteed by the Fourteenth Amendment."  . . .  The court further found that Mir "ha[d] not pled any plausible circumstance, including his own, where the Mathews analysis would result in a different conclusion[.]"  . . .  Judge Jones therefore dismissed Mir's facial challenge to Section 230(10)(p).  . . .

Mir appealed Judge Jones' determinations both as to Younger abstention and the facial validity of Section 230(10)(p).  . . .  The Second Circuit affirmed by summary order.  See Mir v. Shah, 569 F. App'x 48 (2d Cir. 2014).

On August 23, 2012–two weeks after the Shah opinion was issued [by the District Court] and four days after the Medical Board of California revoked Mir's medical license for the final time-the New York Medical Board scheduled a hearing concerning the charges against Mir.  The hearing date was October 25, 2012.  . . .  Mir claims that he did not receive notice of the hearing, and he did not appear on October 25, 2012.  . . .

As required by Section 230(10)(e) . . ., an administrative officer conducted the hearing on October 25, 2012, concerning the charges against Mir.  . . .  The administrative officer "ruled that the Board obtained jurisdiction over [Mir] by the service of the August 23, 2012 Notice of Referral Proceeding and Statement of Charges at [Mir]'s last known address [,] [and][t]he hearing proceeded in [Mir's] absence."  . . .  At the hearing, certain documents-including the California revocation decision-were received in evidence, but there was no witness testimony.
. . .
On December 27, 2012, a three-member committee of the New York Medical Board issued a decision finding that Mir had

> [failed to appear.  Thus, the hearing officer ruled that Mir's failure to appear constituted default and that "the charges against [him] were deemed admitted."  The hearing officer also considered "three disciplinary orders from the California board."]

> The documentation before the Committee proved that the California
> Board disciplined [Mir] for practicing with gross negligence and
> with repeated negligent and incompetent acts, failing to maintain
> accurate patient records, knowingly making false statements and
> violating probation.  The Committee concluded that [Mir]'s conduct
> in California, if committed in New York, would constitute
> misconduct as practicing fraudulently, practicing with negligence
> and incompetence on more than one occasion, practicing with gross
> negligence, engaging in conduct that evidenced moral unfitness,
> failing to maintain accurate patient records and violating probation.
> . . .
> The Committee votes 3–0 to revoke [Mir]'s License. We conclude
> that [Mir]'s failure to address his deficiencies and admit his mistakes
> leaves [Mir] at risk to repeat his misconduct.... The Committee
> concludes that revocation provides the only penalty that will assure
> the protection of the citizens in this State.

Accordingly, Mir's New York medical license was revoked.

No. 13-9172, 2015 WL 1408891, at *3-6 (S.D.N.Y. Mar. 27, 2015), aff'd 668 F. App'x 368 (2d

Cir. 2016).  The Southern District of New York dismissed Plaintiff's claims against the New York

defendants on absolute immunity grounds, dismissed his claims against the California defendants

for failing to state a claim, and denied Plaintiff leave to amend his complaint.  See id. at *18-20.

The United States Court of Appeals for the Second Circuit affirmed the district court's ruling.  See

Mir v. Bogan, 668 F. App'x 368, 368-69 (2d Cir. 2016) ("We have considered all of Mir's

arguments and find them to be without merit.")

In 2018, Plaintiff again filed suit in the Southern District of New York naming almost 80

defendants, many of whom are also named in the present lawsuit.  See Mir v. Zucker, No. 19-6374,

Doc. No. 1 (S.D.N.Y. July 10, 2019).  He alleged that new deposition evidence required that his

New York medical license be reinstated.  Id. at 6-7.  The district court dismissed all his claims but

granted him leave to amend his complaint.  See Mir v. Zucker, No. 19-6374, 2019 WL 5693695,

at *1 (S.D.N.Y. Nov. 1, 2019).

To support his amended complaint in the Southern District of New York, Plaintiff asserted that neither claim preclusion nor issue preclusion barred that lawsuit because he had discovered new evidence that he did not have when filing his 2012 lawsuit. See Mir v. Zucker, No. 19-6374, 2020 WL 2086215, at *1 (S.D.N.Y. Apr. 29, 2020). The district court rejected his arguments, found that both doctrines precluded his lawsuit, and dismissed his claims. Id. On appeal, the Second Circuit affirmed the district court's dismissal. See Mir v. Kirchmeyer, No. 20-1659, 2021 WL 4484916, at *5 (2d Cir. Oct. 1, 2021). Although it held that the district court erred in dismissing Plaintiff's claims under issue preclusion, the Second Circuit nevertheless held that "the district court's dismissal of Mir's claims is properly affirmed on the basis of claim preclusion, or res judicata."[25] Id. at *2-3.

## III.   STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(6)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir.

---

[25] The Second Circuit also held that Plaintiff failed to state a claim against the members of the New York State Board of Medicine because they were "members of a state medical board other than the one that revoked Mir's medical license" and they lacked "disciplinary authority with respect to physicians." Id. at *3. The court dismissed Plaintiff's claims against the same defendants that he names in the present action as members of the New York State Board of Medicine. See id. at *3 n.3.

2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts:  "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining whether a claim is plausible, a district court may also consider any affirmative defenses raised by the moving party. "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing FED. R. CIV. P. 12(B)). However, the so-called "Third Circuit Rule" allows affirmative defenses to be raised in a 12(b)(6) motion. Id.; see also Ball v. Famiglio, 726 F.3d 448, 459 n.16 (3d Cir. 2013), cert. denied, 134 S. Ct. 1547 (2014) ("[A] number of affirmative defenses that are not listed in Rule 12(b) [can] still be made by motion, provided that the basis of the defense [is] apparent on the face of the complaint."); Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) ("[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint."). For instance, a statute of limitations defense may be raised in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)); see also Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("[Q]ualified immunity may be raised in a motion to dismiss at the pleading stage . . . ."); Hartmann v. Time, Inc., 166 F.2d 127, 140 n.3 (3d Cir. 1947) (explaining that defense of res judicata may be raised in answer or in motion to dismiss).

### B. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when a court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (internal citation omitted). To show personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. Metcalfe v. Renaissance

Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).  Where, as here, the court chooses not to conduct an evidentiary hearing, the plaintiff need only "establish a prima facie case of personal jurisdiction."  Shuker v. Smith & Nephew, 885 F.3d 760, 780 (3d Cir. 2018) (citing O'Connor, 496 F.3d at 316).  In deciding a motion to dismiss for lack of personal jurisdiction, a court must take the plaintiff's allegations as true and draw all factual disputes in its favor.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

## IV.    ANALYSIS

Defendants make several arguments in seeking dismissal of Plaintiff's lawsuit.  All Defendants assert that sovereign immunity, claim preclusion, and issue preclusion bar Plaintiff's claims.  The Court agrees.  Claims I to VII against members of the Pennsylvania Medical Board, New York State,[26] and California Medical Board sued in their official capacity will be dismissed on Eleventh Amendment sovereign immunity grounds.  Furthermore, Claims I to VII against members of the Pennsylvania Medical Board, New York State, and California Medical Board sued in their individual capacity will be dismissed as barred by claim preclusion and issue preclusion. In addition, certain Defendants assert that the statute of limitations and the lack of personal jurisdiction over them warrants dismissal of Plaintiff's claims.  More specifically, the Pennsylvania Medical Board Defendants also will have certain claims against them dismissed based on the statute of limitations.  Moreover, Claims I to VII against members of the New York State and California Medical Boards sued in their individual capacity, and doctors associated with Pomona Valley Hospital Medical Center ("PVHMC"), and San Antonio Community ("SAC") Hospital sued in their individual capacity and the two hospitals themselves will be dismissed on personal

---

[26] New York State Defendants include former members of the New York State Board of Medicine, the Commissioner of the New York Department of Health, and the Director of the Office of Professional Medical Conduct.  (See Doc. No. 1 at 27-29.)

jurisdiction and statute of limitations grounds.  As a result of these rulings, which dispose of all claims brought by Mir against the 57 Defendants, the Court need not address Defendants' additional arguments that they submit compel dismissal of the Complaint.[27]

### A.  Requests for Judicial Notice

First, before addressing the substantive legal issues in this case, several requests have been made by Plaintiff and Defendants to take judicial notice of certain matters.  (Doc. Nos. 30-2, 31-2, 38, 43, 48-57).  The parties request that this Court take judicial notice of public records including, but not limited to, Plaintiff's lawsuits filed in California, Pennsylvania, and New York state and federal trial courts, proceedings before the California and Pennsylvania medical boards, and decisions of courts of appeals denying Plaintiff's claims.

In evaluating a motion to dismiss, "the Court may look beyond the pleadings to 'items subject to judicial notice.'"  United States v. Kindred Healthcare, Inc., 469 F. Supp. 3d 431, 438 n.3 (E.D. Pa. 2020) (quoting Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted)).  Federal Rule of Evidence 201(b) allows courts to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(B).  "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."  S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999); see also SigmaPharm, Inc.

---

[27] The additional arguments are that absolute and qualified immunity bar Plaintiff's claims, the Health Care Quality Improvement Act does not afford him a private cause of action, and his claims lack merit.

v. Mut. Pharm. Co., 772 F. Supp. 2d 660, 667 n.41 (E.D. Pa. 2011) ("The Court may take judicial notice of other court proceedings.") (citations omitted).

When claim preclusion is raised as a defense in new litigation, judicial notice can be taken of Plaintiff's claims raised in prior judicial proceedings. See In re Energy Future Holdings Corp., 990 F.3d 728, 737 (3d Cir. 2021). "The defense of claim preclusion . . . may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision." Toscano v. Conn. Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008) (citing Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972)). Cf. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding district court was entitled to take judicial notice of prior bankruptcy proceedings). Therefore, the Court will take judicial notice of the prior federal and state court and administrative proceedings.

### B. Counts I to VII Will Be Dismissed Against Members of the Pennsylvania, New York, and California Medical Boards in Their Official Capacity Based on Eleventh Amendment Sovereign Immunity Grounds

Defendant has sued numerous members of the Pennsylvania, New York, and California Medical Boards in their official capacity. For reasons that follow, these Defendants cannot be sued in their official capacity. As such, the claims against them in Counts I to VII will be dismissed.

The Eleventh Amendment to the United States Constitution bars private parties from suing states in federal court.[28]  See Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008)

---

[28]  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

(describing "immunity of States from suit in the federal courts" is a "fundamental aspect of state sovereignty").  This doctrine, referred to as state sovereign immunity, also prohibits private parties from suing state agencies and state officials in their official capacity.  See Capograsso v. Sup. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009).  This is because "a suit against a governmental official in his or her official capacity is treated as a suit against the governmental agency itself."  A.M. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004).  "It is also well established that even though a State is not a named party to the action, the suit [against state officials] may nonetheless be barred by the Eleventh Amendment."  Edelman v. Jordan, 415 U.S. 651, 663 (1974).[29]

Here, Plaintiff is suing the members of the California, Pennsylvania, and New York Medical Boards in their official capacity.  He is also suing the Commissioner of the New York Department of Health and the Director of the Office of Professional Medical Conduct in their official capacity.  For the reasons noted above, when Plaintiff sues these Defendants in their official capacity, he is suing their respective states.  He cannot do so because Eleventh Amendment sovereign immunity bars his claims against them.  Consequently, all claims asserted against them in their official capacity will be dismissed.

_____

[29] The Third Circuit has held that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.

Pa. Fedn. of Sportmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). No exception applies in this case.  Congress has not abrogated the immunity, no state has waived it, and there is no ongoing violation of federal law here.  In addition, although Plaintiff requests prospective injunctive relief from state officers in their individual capacity, as discussed infra, these claims are being dismissed because they violate the statute of limitations and res judicata (claim preclusion and issue preclusion).

**C. Counts I to VII Will Be Dismissed as Time-Barred Against All Defendants Except the Pennsylvania Medical Board Defendants in Their Individual Capacity**

All Defendants, except the two hospitals (PVHMC and SAC Hospital), are sued in their individual capacity and initially assert that all the claims made by Plaintiff in Counts I to VII are barred by a statute of limitations.  The same defense is raised by the two hospitals.  Defendants claim that Plaintiff knew when his causes of action accrued and did not file this lawsuit before the statutes of limitation expired.  Because it is clear on the face of the Complaint that Plaintiff did not file this action within the statute of limitations for each of his claims against all Defendants except for the Pennsylvania Medical Board Defendants, the claims against them in Counts I to VII will be dismissed.[30]

The parties agree that the statute of limitations for each of his claims[31] are as follows:

(1)     <u>Count III</u>: Intentional Interference with Right to Practice a Profession under 42 U.S.C. § 1983: two (2) years.  <u>See McGovern v. City of Phila.</u>, 554 F.3d 114, 115 n.2 (3d Cir. 2009);

(2)     <u>Count IV</u>:

   a.  Violation of Contractual and Civil Rights under 42 U.S.C. § 1981: four (4) years.  <u>See Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 371, 383 (2004).

   b.  Conspiracy to Violate Contractual and Civil Rights under 42 U.S.C. § 1985: two (2) years.  <u>See Bougher v. Univ. of Pittsburgh</u>, 882 F.2d 74, 79 (3d Cir.

---

[30]  As discussed <u>infra</u>, only Plaintiff's § 1986 claim in Count IV and his defamation claim in Count VI asserted against the Pennsylvania Medical Board Defendants survive the statute of limitations.

[31]  The success of Counts I and II for preliminary and permanent injunctive relief, respectively, depends on whether Counts III to VII are viable.  Because Counts III to VII will be dismissed as time-barred, Counts I and II also will be dismissed.

1989) ("[W]e hold that section 1985(3) claims are subject to the same limitations period [as section 1983 claims].").

      c.   Neglect to Prevent a Conspiracy to Violate Contractual and Civil Rights under 42 U.S.C. § 1986: one (1) year.  <u>See</u> 42 U.S.C. § 1986;

(3)     <u>Count V</u>: Interference with Prospective Economic Advantage: two (2) years.  <u>See</u> 42 Pa. C.S. § 5524(7); <u>see</u> <u>also</u> <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 91 (3d Cir. 2000);

(4)     <u>Count VI</u>: Defamation of Character: one (1) year.  <u>See</u> <u>Am. Future Sys., Inc. v. Better Bus. Bureau</u>, 923 A.2d 389, 392 n.2 (Pa. 2007) (citing 42 Pa. C.S. § 5523(1)); and

(5)     <u>Count VII</u>: Intentional Infliction of Emotional Distress: two (2) years.  <u>See</u> <u>Aquilino v. Phila. Cath. Archdiocese</u>, 884 A.2d 1269, 1275 (Pa. Super. 2005) (stating two-year limitations period applies to intentional infliction of emotional distress claims) (citing 42 Pa. C.S. § 5524).

Insofar as to when a claim accrues, the Third Circuit has stated:

> . . . .  Federal law governs a cause of action's accrual date.  <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 919 (3d Cir. 1991).  Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based."  <u>Sameric Corp. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted); <u>see also</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 (3d Cir. 1998).  The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known.  <u>Barren v. United States</u>, 839 F.2d 987, 990 (3d Cir. 1988).  As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury.  <u>See</u> <u>United States v. Kubrick</u>, 444 U.S. 111, 120, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979).  "The cause of action accrues even though the full extent of the injury is not then known or predictable.  Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed

enough, placing the supposed statute of repose in the sole hands of the party seeking relief." <u>Wallace</u>, 549 U.S. at 391.

<u>Kach v. Hose</u>, 589 F.3d 626, 634-35 (3d Cir. 2009) (internal quotation marks and citations omitted). The critical dates for statute of limitations purposes, therefore, are when Plaintiff (1) should have known that he suffered an injury and (2) filed the lawsuit to redress that injury.  Plaintiff filed this lawsuit on November 3, 2017.  Accordingly, the Court will address the statutes of limitation for each group of Defendants to determine when Plaintiff's causes of action against each of them accrued.[32]

---

[32] In response to Defendants' statutes of limitation defenses, Plaintiff avers that the limitations periods governing his claims were "equitably tolled due to pendency of [the] action[s]" in two of his pending lawsuits in the Southern District of California.  (Doc. No. 61 at 3.)  "[F]or a litigant to be entitled to equitable tolling, [s]he must establish two elements:  '(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way and prevented timely filing.'"  <u>D.J.S.-W. v. United States</u>, 962 F.3d 745, 752 (3d Cir. 2020) (citation omitted).  To meet the second prong, "the litigant must show that the circumstances were 'extraordinary <u>and</u> beyond [her] control."  <u>Id.</u> (citing <u>Menominee Indian Tribe v. United States</u>, 577 U.S. 250, 257 (2016)) (emphasis in original).

Here, Plaintiff has not met the requirements for showing that he is entitled to equitable tolling.  Specifically, he has not shown that his delay in filing these claims were "both extraordinary <u>and</u> beyond [his] control."  <u>Menominee Indian Tribe v. United States</u>, 577 U.S. 250, 257 (2016) (emphasis in original).  To the contrary, Plaintiff was in full control of when and where he filed federal or state lawsuits across the country.  Indeed, he had as many as five cases pending in federal and state courts in 2016.

Two cases were pending in federal court in California.  <u>See</u> <u>Mir v. Med. Bd. of Cal.</u>, No. 12-2340, Doc. No. 1 (S.D. Cal. Sept. 25, 2012), <u>aff'd</u> <u>Mir v. Levine</u>, 745 F. App'x 726 (9th Cir. 2018); <u>Mir v. Deck</u>, No. 12-1629, Doc. No. 1 (C.D. Cal. Sept. 9, 2012), <u>aff'd</u> 676 F. App'x 707 (9th Cir. 2017).

One case was pending in the Southern District of New York.  <u>See</u> <u>Mir v. Bogan</u>, No. 13-9172, Doc. No. 1 (S.D.N.Y. Dec. 26, 2013), <u>aff'd</u> 668 F. App'x 368 (2d Cir. 2016).

Another was pending in the Middle District of Pennsylvania.  <u>See</u> <u>Mir v. Behnke</u>, No. 15-2233, Doc. No. 1 (M.D. Pa. Nov. 20, 2015), <u>aff'd</u> 680 F. App'x 126 (3d Cir. 2017).  This case was pending when Plaintiff filed his appeal in the Commonwealth Court of Pennsylvania on March 17, 2016.  (<u>See</u> Doc. No. 50 at 1.)  After his appeal was denied in the Commonwealth Court, Plaintiff filed a petition for an allowance of appeal to the Pennsylvania Supreme Court.  The

### 1. California Medical Board Defendants

Plaintiff knew or should have known that his claims against the California Medical Board Defendants accrued when the California Medical Board revoked his license for the final time on August 19, 2012.  (See Doc. No. 1-1 at 46.)   Thus, the critical date for statute of limitations purposes against the California Medical Board Defendants is August 19, 2012.  Because Plaintiff filed his Complaint on November 3, 2017, over a year after the running of the four (4) year statute of limitations, which was the longest period of limitations, his claims against these Defendants will be dismissed.[33]   Consequently, Counts I to VII against the California Medical Board Defendants in their individual capacity will be dismissed.

### 2. California Accessory Defendants

The California Medical Board Defendants filed a Motion to Dismiss that included Defendants Matyszewski, Wu, Bardin, and Deck (the "California Accessory Defendants").  But, because Plaintiff alleges that the four California Accessory Defendants took actions against him separate from the California Medical Board, the Court will consider for statute of limitations purposes Plaintiff's claims against the four California Accessory Defendants.  Plaintiff alleges that the California Accessory Defendants' actions against him took place no later than the end of the

---

Petition was denied on May 23, 2017.  See Mir v. Bureau of Prof'l & Occupational Affairs, State Bd. of Med., 169 A.3d 543 (Pa. 2017).  Thus, because equitable tolling does not apply here, the Court will assess how the statutes of limitation impact his claims against each group of Defendants.

[33] Notably, Plaintiff filed suit against the California Board just over one month after it had revoked his California medical license.  (See Doc. No. 1-1 at 46.)  This is further evidence of his awareness that his claims had accrued.

disciplinary proceedings on April 6, 2005.[34]  (See Doc. No. 1-1 at 42; see also Doc. No. 1 at 29-

32.)  Again, the Complaint in this case was filed on November 3, 2017.  Therefore, because

Plaintiff did not file this case within the four-year limitations period, the longest one, none of his

claims are timely.  Thus, Counts I to VII against the California Accessory Defendants will be

dismissed.

### 3.  PVHMC Defendants

Defendants Pomona Valley Hospital Medical Center ("PVHMC"), Garg, Disney, and

Damuth, Jr., (the "PVHMC Defendants") assert that Plaintiff's claims against them are time-

barred.  Plaintiff states that Defendants PVHMC and Damuth, Jr. "summarily suspended and

terminated" him from his staff position at PVHMC on November 13, 2000.  (Doc. No. 1 at 32-33.)

Defendants Garg and Disney allegedly offered false testimony during the disciplinary proceedings

from October 18, 2004 to April 6, 2005.  (See Doc. No. 1-1 at 3.)  Additionally, Plaintiff's claims

against the PVHMC Defendants "accrued when the Medical Board revoked Plaintiff's license in

December of 2006, and he became aware of the injury allegedly caused by the actions of the

PVH[MC] defendants."  Mir v. Deck, No. 12-1629, 2013 WL 4857673, at *8 (S.D. Cal. July 10,

2013).  Therefore, since the latest Plaintiff should have known he had a cause of action against the

PVHMC Defendants was December 2006, Plaintiff would have had until December 2010 to file

his claims in this Court, again using the four (4) year limitations period of 42 U.S.C. § 1981 as the

---

[34]  Plaintiff's claims against the California Accessory Defendants are limited to their involvement
in, and alleged false testimony during, the revocation proceedings that took place between
October 18, 2004 and April 6, 2005.

guide.  Plaintiff instead filed this lawsuit on November 3, 2017.  Therefore, Counts I to VII against the PVHMC Defendants will be dismissed.[35]

### 4.  SAC Hospital Defendants

Plaintiff should have been aware of a cognizable legal injury caused by the San Antonio Community ("SAC") Hospital Defendants as of the date when they were last involved in his allegedly unlawful disciplinary proceedings before the California Medical Board.  Specifically, Plaintiff's claim against them accrued when a SAC Hospital employee allegedly offered false testimony during the disciplinary proceedings on March 9, 2005.  (See Doc. No. 1-1 at 10.) Therefore, the critical date for statute of limitations purposes against the SAC Hospital Defendants is March 9, 2005.  The Complaint in this case was filed on November 3, 2017.  Even under the four-year limitations period of 42 U.S.C. § 1981, the longest limitations period, Plaintiff's claims are untimely by at least eight years.  They are also untimely even if August 12, 2012, the final date of his license revocation, is used.  Therefore, the Court will dismiss Counts I to VII against the SAC Hospital Defendants as untimely.

### 5.  New York State Defendants

New York State Defendants submit that Plaintiff's claims against them accrued on January 9, 2013 when he received notice of the New York Board's decision to revoke his medical license. (See Doc. No. 1-2 at 7.)  As noted above, Plaintiff filed the Complaint in this case on November 3, 2017.  Because even the claim with the longest limitations period, which is four years, is time-barred, Counts I to VII will be dismissed against the New York State Defendants.

---

[35] And even if August 19, 2012, when the California Medical Board last revoked Plaintiff's license, is used as the accrual date, the Complaint in this case was still filed past the running of the statute of limitations.

### D. Count VI and the Section 1986 Claim in Count IV Will Be Dismissed Against the Pennsylvania Medical Board Defendants as Time-Barred

The Pennsylvania Medical Board Defendants concede that Plaintiff's cause of action against them accrued in 2015.  (See Doc. No. 13 at 18.)  More specifically, it appears that the limitations period commenced on November 10, 2015, when Plaintiff received notice of the Pennsylvania State Board of Medicine's Final Adjudication and Order revoking Plaintiff's medical license. (See Doc. Nos. 13-1 at 1, 10.)  However, both Plaintiff's § 1986 and state law defamation claims are governed by a one-year statute of limitations.  Since Plaintiff filed this Complaint on November 3, 2017, over one year beyond the running of these statutes of limitation, his § 1986 and defamation claims are time-barred.  Accordingly, Count IV's § 1986 claim and Count VI defamation claim will be dismissed.  Although the claims alleged in Count III, the remaining claims alleged in Count IV, and the claims alleged in Counts V and VII against the Pennsylvania Medical Board Defendants were timely filed, for reasons discussed infra, they too will be dismissed.

### E. Counts I to VII Against All Defendants in Their Individual Capacity Will Be Dismissed on Res Judicata Grounds

Res judicata is a legal term that encompasses the defenses of claim preclusion and issue preclusion.  See United States v. Weiss, No. 21-1592, slip op. at 10-11 n.4 (3d Cir. Nov. 2, 2022). Claim and issue preclusion are meant to prevent a party from relitigating matters that were already decided or could have been decided in prior litigation.  In applying these defenses, federal courts use the tests formulated under state law.  See Menominee Indian Tribe v. United States, 577 U.S. 250, 257 & n.2 (2016); see also Walzer v. Muriel, Siebert & Co., 221 F. App'x 153, 156-57 (3d Cir. 2007) (applying New York law on claim preclusion where earlier suit was decided in New York).

33

The Pennsylvania Medical Board, New York State, and California Medical Board Defendants contend that claim and issue preclusion bar the claims raised in the Complaint because: (1) Plaintiff has raised the same issues and claims in this suit as he has in other state and federal lawsuits; (2) there were final judgments on the merits issued against Plaintiff on the same claims he is raising in this case; (3) the same parties are involved in both the prior and current litigation; and (4) Plaintiff had a full and fair opportunity to litigate in the prior proceedings. Thus, all Medical Board Defendants claim Plaintiff is barred from raising the prior-litigated claims and issues in this lawsuit. However, the states of Pennsylvania, New York, and California apply claim and issue preclusion differently. Therefore, the Court will consider each state's applicable claim and issue preclusion law seriatim.

### 1. Pennsylvania Medical Board Defendants

#### a. Counts I to VII Against the Pennsylvania Medical Board Defendants Are Barred by Claim Preclusion

Pennsylvania law recognizes two forms of preclusion: claim preclusion and issue preclusion. See In re Iulo, 766 A.2d 335, 337 (Pa. 2001). Turning first to claim preclusion, under Pennsylvania law, claim preclusion requires that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (citing Bearoff v. Bearoff Bros, 327 A.2d 72, 74 (Pa. 1974) (citations omitted)). Claim preclusion also applies "to claims which could have been litigated during the first proceeding if they were part of the same cause of action." Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995) (citation omitted). For reasons that follow, claim preclusion bars Counts I to VII against the Pennsylvania Medical Board Defendants.

### i.     First Prong: Thing Sued Upon or For

The first prong of claim preclusion is met here.  In this case and prior cases, Plaintiff sought to have his medical licenses reinstated, which is the thing sued upon or for.  He sought this relief in Pennsylvania state court and in the Middle District of Pennsylvania.  See Mir v. Bureau of Prof'l & Occupational Affairs, State Bd. of Med., No. 2557 C.D. 2015, 2016 WL 6407477, at *4 (Pa. Commw. Ct. Oct. 31, 2016); Mir v. Behnke, No. 15-2233, 2016 WL 3269093, at *2 (M.D. Pa. June 15, 2016).  He also sought this relief in New York and California.  See Mir v. Kirchmeyer, No. 20-1659, 2021 WL 4484916, at *5 (2d Cir. Oct. 1, 2021); Mir v. Kirchmeyer, No. 12-2340, 2017 WL 4271892, at *2 (S.D. Cal. Sept. 26, 2017).

### ii.    Second Prong: Same Cause of Action

Although it appears that Plaintiff is raising, in part, new claims, citing different federal statutes and state tort causes of action, the facts underlying these claims and those raised in his prior litigation are similar.[36]  Changing the legal theory does not necessarily give rise to a new cause of action, especially when the underlying events are the same.  See Turner, 449 F.3d at 549. Plaintiff had the opportunity to raise the claims made in this case in his other litigation and apparently chose not to do so.  Such action does not undermine the preclusive effect of the earlier litigation on the claims made here.

In the earlier litigation, Plaintiff argued that the California Board's decision to revoke his medical license was unjustified and unlawful.  Furthermore, Plaintiff argued before the

---

[36] As the Pennsylvania Superior Court held in McArdle v. Tronetti:

> As to the identity of cause[s] of action, rather than resting upon the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.

627 A.2d 1219, 1222 (Pa. Super. Ct. 1993) (citation omitted).

Commonwealth Court of Pennsylvania that since the California Board's revocation was unlawful, then the Pennsylvania Board's decision to reciprocally revoke his Pennsylvania medical license in reliance on the California Board's actions also was unlawful.  He identifies the same underlying facts in this case—that the Pennsylvania Board's decision to revoke his license was wrongful because it relied on the California Board's unlawful revocation.

Moreover, Plaintiff asserts that the new federal statutory causes of action in the Complaint are not subject to claim preclusion since they were not considered during the state court proceedings.  However, because he alleges identical facts in the Complaint before this Court that he alleged before Commonwealth Court, the Middle District of Pennsylvania, the Southern District of New York, and the Central and Southern Districts of California, he could have raised those federal causes of action in those earlier proceedings.[37]  But he apparently chose not to do so.  See Eburuoh v. Wells Fargo Bank, N.A., No. 22-1246, 2022 WL 4461397, at *2 (3d Cir. Sept. 26, 2022) (affirming district court's judgment that appellant's arguments were barred by claim preclusion because they "could have been raised during" earlier state court proceedings).  Thus, the second prong of claim preclusion is met here.

### iii.    Third Prong: Same Parties or Their Privies

The third prong of claim preclusion also is met here.  In addition to suing several members of the Pennsylvania State Board of Medicine that he previously sued in the Middle District of

---

[37] Plaintiff also filed complaints strikingly similar to the one filed in this case in Mir v. Deck, No. 12-1629, Doc. No. 1 (C.D. Cal. Sept. 9, 2012), Mir v. Bogan, No. 13-9172, Doc. No. 1 (S.D.N.Y. Dec. 26, 2013), and Mir v. Zucker, No. 19-6374, Doc. No. 1 (S.D.N.Y. July 10, 2019).

Plaintiff also filed similar complaints seeking only injunctive relief in Mir v. Behnke, No. 15-2233, Doc. No. 1 (M.D. Pa. Nov. 20, 2015) and Mir v. Medical Bd. of California, No. 12-2340, Doc. No. 1 (Sept. 25, 2012).

Pennsylvania, Plaintiff also sues members of the Board as of the date of the filing of this lawsuit.[38] Nonetheless, though the latter group of Defendants were not named in earlier lawsuits, they are in privity with the earlier-named Defendants because they have a "close and significant relationship" with the earlier-named Pennsylvania Medical Board Defendants.  Pasqua v. Cnty. of Hunterdon, No. 15-3501, 2017 WL 5667999, at *12 n.13 (D.N.J. Nov. 27, 2017) (citing Gambocz v. Yelencsics, 468 F.2d 837, 841 (3d Cir. 1972)).  Plaintiff fails to allege that the Pennsylvania Medical Board Defendants not named in his earlier lawsuit were personally involved in any of the acts alleged in his Complaint aside from them having "authority to reinstate" Plaintiff's medical license.  (Doc. No. 1 at 17-20.)  Therefore, the same parties or their privies are being sued here.

### iv.     Fourth Prong: Capacity to Sue or Be Sued

The parties do not dispute that the fourth prong of claim preclusion is met here.  Plaintiff has sued the members of the Pennsylvania State Board of Medicine in their individual capacity in prior lawsuits and sues them in their individual and official capacities in this case.  Thus, all four prongs of claim preclusion have been met here and Counts I to VII against the Pennsylvania Medical Board Members in their individual capacity will be dismissed.

### b.     Counts I to VII Against the Pennsylvania Medical Board Defendants Also Are Barred by Issue Preclusion

The other form of preclusion is issue preclusion.  Issue preclusion under Pennsylvania law has four elements:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action;
>
> (2) there was a final judgment on the merits;

---

[38]  In both the present lawsuit and the earlier lawsuit filed in the Middle District of Pennsylvania, Plaintiff sued Defendants Brod, Castle, Levine, Heine, Loiselle, and Sharma.  Defendants Cummings III, Sutton, Mitchell, and Moran were not named in Plaintiff's earlier lawsuit.

(3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and

(4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action.

Greenway Ctr., Inc. v. Essex Ins. Co., 475 F.3d 139, 147 (3d Cir. 2007) (quoting Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996)).

### i.   First Prong: Identity of Issues

With respect to the first prong of issue preclusion, Plaintiff's extensive litigation history and nearly identical complaints filed in other federal courts confirm that he is presenting issues identical to those raised in earlier litigation.  First, the Court will identify the issues decided before the Southern District of New York, which dismissed an almost identical complaint

Before the Southern District of New York, Plaintiff raised several issues:

[Plaintiff] has [a] strong likelihood of prevailing on [the] merit[s] because there are no longer any grounds for [California Medical Board] Defendants to [n]ot reinstate Dr. Mir's California medical license prospectively.
. . .
Since [the] [d]ecision to [r]evoke Dr. Mir's [New York] State medical license by Defendants [New York] [M]edical Board members ***is entirely based*** on [California's revocation decision, the New York Board should reinstate his] unrestricted [New York] medical license.
. . .
As a proximate result of the illegal actions of defendants alleged above Dr. Mir has been damaged in that he has been deprived of his medical license and right to earn a livelihood and has suffered a loss of income, reputation, standing in the community[,] of peace of mind, enjoyment of life and opportunity to pursue his chosen profession and will continue to suffer extreme financial, emotional, and professional hardships and to his detriment unless relief is granted.
. . .
All of these [New York State, California Medical Board, Pomona Valley Hospital Medical Center ("PVHMC"), and San Antonio Community ("SAC") Hospital] Defendants acted in concert and aided and abetted the discriminatory policies and practices of Defendant California board members as they discriminate other members of the minority group in targeting [them] for investigations, bringing false, fraudulent charges, conducting sham proceedings and imposing [the] harshest penalties.
. . .

> [The New York State Defendants] intentionally acted with designs to disrupt [Plaintiff's economic] relationship [with third parties]. . . . [They] actually caused disruption of the relationship.
>
> . . .
>
> Defendants placed [] false and defamatory statements and information [regarding Plaintiff's negligence and incompetence] on their websites, reported [them] to [the] National [Practitioner's] Data Bank and to other medical boards . . . .   Defendants made these false statements with malice without reasonable and probable cause for believing the truth of the allegations or averments when in fact, they all knew that such statements were utterly false.
>
> . . .
>
> [The New York State, California Medical Board, PVHMC, and SAC Hospital] Defendants['] conduct was extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized community.

Mir v. Zucker, No. 19-6374, Doc. No. 1 (S.D.N.Y. January 22, 2020) (emphasis in original).  In

Zucker, Plaintiff directed those claims to members of the New York and California medical boards

and other state agencies.

Plaintiff also raises similar issues in the Complaint in this case.  Upon close inspection, the

present Complaint and the one filed in the Southern District of New York are nearly

indistinguishable.  The Complaint in this case asserts the following:

> [Plaintiff] has [a] strong likelihood of prevailing on [the] merit[s] because there are no longer any grounds for [California Medical Board] Defendants to [n]ot reinstate Mir's California license prospectively.
>
> . . .
>
> Since [the] [d]ecision to [r]evoke 'Mir's [Pennsylvania] medical license by Defendant[] Pennsylvania [M]edical Board members is ***entirely*** based on [California's revocation decision, the Pennsylvania Board should reinstate his] unrestricted [Pennsylvania] medical license.
>
> . . .
>
> As a proximate result of the illegal actions of defendants alleged above 'Mir' has been damaged in that he has been deprived of his medical license and right to earn a livelihood and has suffered a loss of income, reputation, standing in the community and opportunity to pursue his chosen profession and will continue to suffer extreme financial, emotional, and professional hardships and to his detriment unless relief is granted.
>
> . . .
>
> All Defendants acted in concert and discriminated [against] 'Mir' as they discriminate other members of the minority group in targeting [them] for

investigations, bringing false, fraudulent charges, conducting sham proceedings and imposing [the] harshest penalties.

. . .

Defendants placed [] false and defamatory statements [regarding Plaintiff's negligence and incompetence] on its web site, reported [them] to [the] National [Practitioner's] Data Bank and to other medical boards. Defendants made these false statements with malice without reasonable and probable cause for believing the truth of the allegations or averments.

. . .

Defendants['] conduct was <u>extreme and outrageous</u> as to exceed all bounds of that usually tolerated in a civilized community.

(Doc. No. 1-2 at 7-15 (emphasis in original).)

Plaintiff raises these issues against members of the Pennsylvania, New York, and California medical boards and other New York State agencies. As such, the issues raised before this Court practically mirror those Plaintiff raised before the Southern District of New York. And Plaintiff's assertion that the Pennsylvania Board's revocation decision was unlawful was already dismissed by the Commonwealth Court of Pennsylvania. <u>See</u> <u>Mir v. Bureau of Prof'l & Occupational Affairs, State Bd. of Med.</u>, 2016 WL 6407477, at *8-9. Therefore, the first prong of issue preclusion, the identity of issues, is easily met here.

### ii.    Second Prong: Final Judgment on the Merits

Regarding the second prong, there was a final judgment on the merits on the same issues Plaintiff asserts in this case. The Southern District of New York dismissed Plaintiff's similar complaint in its entirety on a variety of grounds including claim and issue preclusion and failure to state a claim. <u>See</u> <u>Mir v. Zucker</u>, 2019 WL 5693695, at *4-8. On appeal, the Second Circuit affirmed the Southern District of New York's judgment. <u>See</u> <u>Mir v. Zucker</u>, 2021 WL 4484916, at *2-5. The Second Circuit's affirmance of the lower court's dismissal acts as a final judgment on the merits. Additionally, the Pennsylvania Supreme Court's denial of Plaintiff's petition for

40

allowance of appeal following the Commonwealth Court's ruling also constitutes a final judgment on the merits.  Therefore, the second prong of issue preclusion is met here.

### iii.    Third Prong: Same Parties or Their Privies

As for the third prong of issue preclusion—same parties or their privies—Plaintiff was involved in all of the lawsuits referenced in this Opinion and, specifically, in <u>Mir v. Zucker</u> where Plaintiff raised the same issues he raises here.  That the Pennsylvania Medical Board Defendants were not parties to Plaintiff's New York federal lawsuit is immaterial since mutuality of parties is not required under Pennsylvania law.[39]  All that is required is that the party against whom preclusion is sought was a party to earlier litigation.  The third prong, therefore, is met here.

### iv.    Fourth Prong: Full and Fair Opportunity to Be Heard

As for the fourth prong, the Commonwealth Court specifically held that Plaintiff "received notice after notice, opportunity to be heard after opportunity to be heard, and continuance after continuance."  <u>Mir v. Bureau of Prof'l & Occupational Affairs, State Bd. of Med.</u>, 2016 WL 6407477, at *6.  For these reasons, Plaintiff's due process arguments against the Pennsylvania Medical Board Defendants are without merit.  Accordingly, the fourth prong is easily met here. Since all four prongs of issue preclusion have been established here, Counts I to VII against the Pennsylvania Medical Board Defendants will be dismissed for this additional reason.

---

[39] In <u>Grant v. GAF Corp.</u>, the Pennsylvania Superior Court noted that under Pennsylvania law:

> Unlike claim preclusion, there is no requirement that there be an identity of parties between the two actions to preclude relitigation of an issue, and issue preclusion may be asserted as either a "sword or a shield" by a stranger to the prior litigation as long as the party against whom it is asserted was a party or in privity with a party [to the prior action].

608 A.2d 1047, 1054 (Pa. Super. Ct. 1992) (citation omitted).

**2. Counts I to VII Against the New York State Defendants Will Be Dismissed Because Claim and Issue Preclusion Bars Plaintiff's Claims**

New York also recognizes claim and issue preclusion, albeit under a different standard than Pennsylvania.  Under New York law, claim preclusion "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  Cho v. Blackberry Ltd., 991 F.3d 155, 168 (2d Cir. 2021) (citation and quotation marks omitted).  Similar to Pennsylvania law, claim preclusion also applies to "claims that could have been raised in the prior litigation."  Matter of Hunter, 827 N.E.2d 269, 274 (N.Y. 2005).

On the other hand, issue preclusion under New York Law applies where:

> (1) [T]he identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party raising the issue had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Cayuga Nation v. Tanner, 6 F.4th 361, 374 (2d Cir. 2021) (internal quotation marks and alterations omitted).  First, this Court will adopt the Second Circuit's reasoning as noted earlier in concluding that claim preclusion bars Plaintiff's claims against the New York State Defendants.  See Mir v. Kirchmeyer, 2021 WL 4484916, at *2-3.[40]  Because the Second Circuit affirmed the District Court's judgment on claim preclusion grounds only, this Court need not address whether Plaintiff

---

[40] The Second Circuit only took issue with the District Court's application of res judicata against Plaintiff's claims because "Mir could not have discovered the deposition evidence he now points to before the court issued its judgment in [Mir v. Bogan, 2015 WL 1408891 (S.D.N.Y. Mar. 27, 2015)]."  However, Plaintiff has already alleged in lawsuits predating discovery of this deposition that various individuals gave false testimony regarding Plaintiff's initial diagnosis of the patient.  (See Doc. No. 1-1 at 37.)  See, e.g., Davis v. Wells Fargo, 824 F.3d 333, 342-43 (3d Cir. 2016) (holding appellant's claims were barred by claim preclusion because he "was well aware of all of the operative facts prior to" filing his amended complaint).

is also barred from raising the claims raised in the Complaint before this Court on issue preclusion grounds.

Next, the Second Circuit decision was made in a case that was filed in the Southern District of New York on July 10, 2017, almost four months before Plaintiff filed his current action in this Court.  Plaintiff's New York lawsuit is nearly identical to the present action—it raises almost identical causes of action and relies on the same body of operative facts.[41]  In other words, no new claims or issues against the New York State Defendants are raised in this Court that were not raised in the Southern District of New York.  Furthermore, the Second Circuit dismissed Plaintiff's claims against the twenty (20) New York State Board of Medicine members named as defendants in the present action.[42]  See Mir, 2021 WL 4484916, at *3 & n.3.

Thus, all four elements of claim preclusion under New York law are met here.  For these reasons and also because the Second Circuit affirmed the dismissal of his New York lawsuit on claim preclusion grounds, Plaintiff's action against the New York State Defendants is barred.  Thus, Counts I to VII against the New York State Defendants in their individual capacity will be dismissed.

---

[41]  Notably, Plaintiff alleged eight causes of action against the defendants in his New York federal lawsuit:    (1) "Preliminary Injunction"; (2) "[Permanent] Injunction"; (3) "Intentional Interference with Right to Practice a Profession," in violation of 42 U.S.C.§ 1983; (4) "Conspiracy to Violate Contractual and Civil Rights," in violation of 42 U.S.C. §§ 1981, 1985, 1986, and 1988; (5) "Intentional Interference with Interstate Commerce," in violation of 18 U.S.C. § 1851; (6) "Interference with Prospective Economic Advantage"; (7) "[Defamation]"; and (8) "Intentional Infliction of Emotional Distress."  See Mir v. Zucker, No. 19-6374, Doc. No. 1 at 110-23.

[42]  As discussed supra, Plaintiff named as defendants all twenty (20) New York Board members in the current lawsuit that he also named in his New York lawsuit.  (See Doc. No. 1 at 28.)  The Second Circuit dismissed Plaintiff's claims against the same defendants for failure to state a claim because they lacked the authority to revoke or reinstate his medical license.

### 3. Counts I to VII Against the California Medical Board Defendants Will Be Dismissed on Res Judicata Grounds

#### a. Claim Preclusion Bars Plaintiff from Relitigating Counts I to VII Against the California Medical Board Defendants

The California Medical Board Defendants submit that Plaintiff's claims against them are barred by claim preclusion. Under California law, claim preclusion has three elements. "Claim preclusion applies only when 'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" Samara v. Matar, 419 P.3d 924, 926 (Cal. 2018) (citation omitted).

As noted above, the first and third prongs—same cause of action and final judgment on the merits, respectively—are met here because there is a final judgment on the merits regarding Plaintiff's claims that the underlying disciplinary proceedings before the California Medical Board that resulted in the revocation of his medical license were unlawful and were tainted by false testimony. See Mir v. Deck, 2013 WL 4857673, at *6-8 (S.D. Cal. July 10, 2013). In addition, the second prong of claim preclusion—same parties or their privies—is met here because Plaintiff named as Defendants in this suit the successors of the California Medical Board members that he sued in his California federal litigation. See Mir v. Bogan, 2015 WL 1408891, at *7 (S.D.N.Y. Nov. 1, 2019) (finding third prong met where successor members of California Board were in privity with predecessors). Accordingly, because all three prongs of claim preclusion under California law are met here, Counts I to VII against the California Medical Board Defendants in their individual capacity will be dismissed.

> **b.    Issue Preclusion Also Bars Plaintiff from Relitigating Counts I to VII Against the California Medical Board Defendants**

The second type of preclusion recognized in California is issue preclusion.   Issue preclusion applies:

> (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.

Samara, 419 P.3d at 926 (citation omitted).  The California Medical Board Defendants argue that Plaintiff is precluded from relitigating the same issues he unsuccessfully raised in earlier lawsuits. With respect to the fourth prong—same parties or their privies—the Court has already discussed supra how Plaintiff's lawsuit against the present members of the Medical Board of California, as successors for the actions of their predecessors on the Board, is one against the same party. Therefore, only the first three prongs will be discussed below.

### i.    First Prong: Final Adjudication

The first prong of issue preclusion—final adjudication—is met here.   Plaintiff's two lawsuits in the Southern District of California ended in a final adjudication on the merits.  In Mir v. Deck, Plaintiff appealed the lower court's decision dismissing Plaintiff's claims as barred by either the statute of limitations or Eleventh Amendment sovereign immunity.[43]  676 F. App'x 707,

---

[43]  Plaintiff's claims in Mir v. Deck are almost identical to the claims he raises in the present action:

> (1) Intentional interference with right to practice a profession in violation of his civil rights pursuant to 42 U.S.C. § 1983;
>
> (2) RICO violation;
>
> (3) Conspiracy to violate civil rights pursuant to 42 U.S.C. §§ 1981, 1985, and 1986;
>
> (4) Intentional interference with prospective economic advantage;
>
> (5) Defamation;

708 (9th Cir. 2017).  In Mir v. Levine, the Ninth Circuit affirmed the lower court's grant of summary judgment in the California Board's favor.  745 F. App'x 726, 728 (9th Cir. 2018).  In both cases, Plaintiff sought to have his medical license reinstated.  In addition to upholding the lower court's conclusion that issue preclusion barred Plaintiff "from relitigating the allegedly incorrect factual findings of the administrative law judge" made during his disciplinary proceedings before the California Medical Board, the Ninth Circuit in Mir v. Levine also affirmed the lower court's dismissal of Plaintiff's equal protection and due process claims.  745 F. App'x at 727.

Moreover, Plaintiff raised similar claims against the California Medical Board Defendants in the Southern District of New York.  See Mir v. Zucker, 2019 WL 5693695, at *1.  In that case, Plaintiff again raised federal claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  See id.  There, the court dismissed those claims as frivolous.  See id. at *7.  Both on motions for reconsideration before the Southern District and on appeal before the Second Circuit, the courts upheld the dismissal and affirmed.  See Mir v. Kirchmeyer, 2021 WL 4484916, at *4-5; Mir v. Zucker, 2020 WL 2086215, at *4-7.  Accordingly, both the Ninth Circuit's affirmances in the two California lawsuits and the Second Circuit's affirmance in the New York lawsuit are final adjudications and the first prong of issue preclusion is met here.

### ii.     Second Prong: Identical Issue

As noted above in concluding that Plaintiff's issues raised against the Pennsylvania Medical Board Defendants are identical to issues raised in earlier litigation, Plaintiff's raises

---

(6) Intentional infliction of emotional distress;

(7) Malicious prosecution.

Mir v. Deck, 2013 WL 4857673, at *1 (S.D. Cal. Sept. 11, 2013).

identical issues against the California Medical Board Defendants.  <u>See</u>, <u>e.g.</u>, <u>Mir v. Zucker</u>, 2019 WL 5693695, at *1-4.  Every court that considered Plaintiff's assertions that the California Medical Board Defendants wrongfully revoked his medical license and conspired with other state medical boards to revoke his medical licenses has rejected them.  Additionally, Plaintiff's assertion that the California Board's revocation decision was wrongful because it was the product of false testimony was also rejected.  <u>See</u> <u>Mir v. Med. Bd. of Cal.</u>, No. 12-2340, 2013 WL 1932935, at *2, *9 (S.D. Cal. May 8, 2013).  Furthermore, Plaintiff's claims against the California Medical Board Defendants in the present lawsuit mirror those raised in numerous others across the country.  They all concern the issue of whether Plaintiff's medical license was legally revoked.  He has not prevailed on this issue wherever it was raised regardless of how he framed the issues.

   **iii.  Third Prong: Actually Litigated and Necessarily Decided**

  The third prong of issue preclusion is easily met here because several courts have concluded that Plaintiff's claims against past and current members of the Medical Board of California for revoking his medical license fail either because they are barred by the statute of limitations, claim or issue preclusion, sovereign immunity, absolute judicial immunity, or qualified immunity.  Extensive litigation has centered on these issues.  Plaintiff attempts to relitigate here the same issues that numerous courts have already ruled on and made final decisions on the merits against him.  Because all four prongs of issue preclusion are met here, Plaintiff is barred from relitigating the issues contained in his present lawsuit against the California Medical Board Defendants. Accordingly, Counts I to VII against the California Medical Board Members will be dismissed on issue preclusion grounds.

**F.   Counts I to VII Against the New York State, California Medical Board, PVHMC, and SAC Hospital Defendants Will Be Dismissed for Lack of Personal Jurisdiction**

In their Motions to Dismiss, the New York State, California Medical Board, Pomona Valley Hospital Medical Center ("PVHMC"), and San Antonio Community ("SAC") Hospital Defendants submit that this Court lacks personal jurisdiction over them.   Specifically, these Defendants aver that they do not have minimum contacts with Pennsylvania sufficient to confer personal jurisdiction.   Plaintiff counters by asserting that these Defendants are subject to personal jurisdiction in Pennsylvania because they purposely directed their activities to affect his ability to practice medicine in Pennsylvania.   For reasons that follow, Counts I to VII against these Defendants will be dismissed for lack of personal jurisdiction.

"A federal district court may assert personal jurisdiction over a nonresident of a state in which the court sits to the extent authorized by the law of that state."   Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987).   This Court sits in Pennsylvania, which permits jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States."   42 Pa. C.S.A. § 5322(b); see also D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009).   Therefore, to determine whether this Court can exercise personal jurisdiction over Defendants, it must evaluate whether, under the Due Process Clause, Defendants have "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."   D'Jamoos, 566 F.3d at 102 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).   The plaintiff has the burden of establishing a "prima facie case of personal jurisdiction." Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 780 (3d Cir. 2018) (citation omitted).

### 1.  General Jurisdiction

Given the above precepts, personal jurisdiction falls under two categories—general and specific.  General jurisdiction will be addressed first.  In <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.</u>, the United States Supreme Court recently explained general personal jurisdiction as follows:

> A state court may exercise general jurisdiction only when a defendant is "essentially at home" in the State. . . .  General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant. . . .  Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select "set of affiliations with a forum" will expose a defendant to such sweeping jurisdiction. . . .  In what we have called the "paradigm" case, an individual is subject to general jurisdiction in her place of domicile. . . .  And the "equivalent" forums for a corporation are its place of incorporation and principal place of business. . . .

141 S. Ct. 1017, 1024 (2021) (citations and internal quotation marks omitted).  In other words, general jurisdiction is appropriate where "the defendant has such 'continuous and systematic' contacts 'as to render [the defendant] essentially at home in the forum State.'"  <u>Aldossari v. Ripp</u>, No. 21-2080, 2022 WL 4138732, at *14 (3d Cir. Sept. 13, 2022).  Here, viewing the allegations in the Complaint in the light most favorable to the Plaintiff, none of the New York or California Defendants have such continuous and systematic contacts with Pennsylvania that make them "at home" in Pennsylvania.  As such, this Court does not have general jurisdiction over them.

Turning first to the New York Defendants, aside from conclusory assertions made by Plaintiff that the New York State Board of Medicine's contacts are "continuous and substantial," Plaintiff offers no facts showing that the Board's members are essentially at home in Pennsylvania, nor can he.  First, none of them reside, own property in, or work in Pennsylvania.  (<u>See</u> Doc. No. 37-1.)  Second, these Defendants have not interacted in any systematic way indicating that they are essentially at home in Pennsylvania.  Third, contrary to Plaintiff's assertions, the New York State Board of Medicine, as an arm of an out-of-state government is not at home in any other state

other than the one in which it operates.  For these reasons, this Court lacks general jurisdiction over the New York State Defendants.  And for these same reasons, this Court also lacks general jurisdiction over the California Medical Board Defendants.[44]

Regarding the PVHMC and SAC Hospital Defendants,[45] the Court lacks general jurisdiction over the individually named Defendants associated with those hospitals.  Similar to the Pennsylvania and California Board members, none of the individuals named as PVHMC or SAC Hospital Defendants are domiciled in Pennsylvania.  Furthermore, none of them have otherwise established continuous or systematic contacts with Pennsylvania such that they would be essentially at home there.  Moreover, the Court also lacks general jurisdiction over PVHMC and SAC Hospital.  Both PVHMC and SAC Hospital are California corporations with their principal places of business in California.  Thus, the only appropriate forum where they would be subject to general jurisdiction is California because, viewing the allegations in the Complaint in the light most favorable to Plaintiff, they have not established any continuous or systematic contacts with Pennsylvania.  Thus, this Court lacks jurisdiction over all New York and California Defendants.

### 2.  Specific Jurisdiction

The other category of personal jurisdiction is specific jurisdiction:

> "[S]pecific jurisdiction . . . extends only to particular claims.  There are two prongs to the specific jurisdiction analysis. . . .  First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate

---

[44] The California Medical Board Defendants also include California Accessory Defendants Matyszewski, Wu, Bardin, and Deck because they served as either prosecutors, experts, or investigators for the Medical Board of California.  Accordingly, the Court also lacks general jurisdiction over the California Accessory Defendants.

[45] The PVHMC Defendants are the Pomona Valley Hospital Medical Center and individuals Garg, Disney, and Damuth, Jr.  The SAC Hospital Defendants are the San Antonio Community Hospital and individuals Alpiner and Koudsi.

act reaching out to do business in that state. . . .  Second, the contacts must give rise to—or relate to—plaintiff's claims. . . .  For the contacts to satisfy the second prong, there must be a 'strong' relationship among the defendant, the forum, and the litigation."

Hepp v. Facebook, 14 F.4th 204, 207-08 (3d Cir. 2021) (quoting Ford Motor Co., 141 S. Ct. at 1024, 1028 (2021)) (citations omitted).

Here, none of the New York or California Defendants have purposefully availed themselves of the privilege of conducting business in Pennsylvania.  In fact, none of these Defendants conduct business in Pennsylvania.  Plaintiff's allegations show only that the New York and California medical boards sometimes revoke the licenses of physicians licensed to practice there, and that some of those physicians also happen to be Pennsylvania residents.  At most, such contacts with Pennsylvania are "fortuitous."  Plaintiff advances no other means by which the New York and California Defendants have exploited any Pennsylvania markets.  Moreover, since the New York and California Defendants have not purposefully availed themselves by reaching out or doing business in Pennsylvania, Plaintiff cannot show that his claims "arise out of relate to" any such contacts.

Plaintiff relies on Calder v. Jones, 465 U.S. 783 (1985) in asserting that the New York and California Defendants are subject to personal jurisdiction in Pennsylvania.  In Calder, the Supreme Court held that personal jurisdiction was proper in California where the Florida defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" and where those defendants "knew [their actions] would have a potentially devastating impact upon respondent." Id. at 789.  In Calder, the court held that, in that case, "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id. at 790.  However, Plaintiff's reliance is misplaced as Calder is entirely distinct from the present matter for several reasons.

First, Calder was a defamation case where injuries were caused by publications that could be, and were, purposefully directed at various states, including California where the plaintiff was located.  See id. at 789.  Second, the Calder Court explicitly held that the Florida defendants, who were editors and a writer for the National Enquirer, intentionally published a defamatory article meant to destroy the respondent's growing acting reputation in California.  See id. at 789-90. Additionally, the defendants also knew that California was the state "in which the National Enquirer has its largest circulation."  Id. at 790.  Third, the Court described the Florida defendants as "primary participants in an alleged wrongdoing intentionally directed at a California resident." Id.

Here, Plaintiff avers no deliberate conduct by the New York and California Defendants toward Pennsylvania or its residents.  Rather, aside from his conclusory statements that these Defendants "purposely direct[] [their] activities," Plaintiff advances nothing more than coincidence, happenstance, and geography, none of which advance him beyond the required threshold at the motion to dismiss stage.  (Doc. Nos. 61 at 20; 62 at 25-26; see also Doc. No. 62 at 25 ("It should not be forgotten that [the] State of Pennsylvania and [New York] share borders [and] at some point, patients freely [cross] the border in each direction in each state to seek medical attention.").)

Moreover, the Pennsylvania State Board of Medicine acts pursuant to Pennsylvania law requiring qualified doctors to practice here.  Aside from considering other states', territories', or countries' revocations or suspensions of medical licenses during its own disciplinary proceedings, the Pennsylvania Board acts locally pursuant to state law.  See 63 P.S. § 422.41(4).  Another state's medical board, which acts pursuant to its own state's law, does not purposefully avail itself of the privilege of conducting business in Pennsylvania.  Moreover, when out-of-state medical boards

discipline physicians licensed to practice within their jurisdiction, their actions are directed primarily to those who practice medicine there; they do not "'purposefully direct[]' their actions toward residents of another State." Burger King v. Rudzewicz, 471 U.S. 462, 476 (1985) (citation omitted). If a physician licensed to practice medicine in that state also is licensed to practice in Pennsylvania and the Pennsylvania Board disciplines the physician as a result of the revocation of his medical license in another state, then that state's interaction with Pennsylvania is only "'random, fortuitous, or attenuated' [and based] on the 'unilateral activity' of [the] plaintiff." Walden v. Fiore, 571 U.S. 277, 286 (2014) (citing Burger King, 471 U.S. at 475).

Plaintiff's assertions that these Defendants' "direct[] discipline[] [of] physicians licensed by [the California or] New York medical board who are residents of Pennsylvania" lack the clear deliberateness or intentionality the Supreme Court found motivated the Florida newspaper defendants in Calder. Therefore, since this Court cannot exercise either general or specific jurisdiction over the New York State, California Medical Board, PVHMC, and SAC Hospital Defendants, Counts I to VII against them will be dismissed for lack of personal jurisdiction.

### G. Amending the Complaint Would Be Futile

Although Plaintiff has not requested that he be granted leave to amend his Complaint, the Court will not grant him leave to amend because doing so would be futile. Because of the pervasive impediments described above to pursuing this case, granting Plaintiff leave to amend his Complaint would be futile. Accordingly, the Court will dismiss Counts I to VII against all Defendants with prejudice.

### V.    CONCLUSION

For the foregoing reasons, the Motions to Dismiss (Doc. Nos. 13, 30, 31, 36, 42) filed by all Defendants will be granted and Counts III to VII will be dismissed. Because all of Plaintiff's

claims in Count III to VII are being dismissed, he is not entitled to the injunctive relief sought in Counts I and II.  For this reason, Counts I and II also will be dismissed.  An appropriate Order follows.